2004 WY 126

**In the Matter of the ESTATE OF Thelma E. McLEAN, Deceased.**

**Donnie Melcher, Appellant (Petitioner),**

v.

**Eugene H. Benson; The Benson Agency; and Heather L. Benson, Appellees (Defendants),**

**and**

**David A. Hall, Personal Representative of the Estate of Thelma McLean, Appellee (Plaintiff).**

**No. 03–210.**

Supreme Court of Wyoming.

Oct. 29, 2004.

Representing Appellant: Douglas Fowler, Cheyenne, Wyoming.

Representing Appellees: Julie M. Yates of Anthony, Nicholas, Tangeman & Yates, LLC, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and SPANGLER, D.J. Ret.

VOIGT, Justice.

[¶ 1] On November 28, 1994, Thelma E. McLean (McLean) executed her Last Will and Testament. McLean's friends, Eugene and Heather Benson, were the only named beneficiaries. After McLean's death, her grandson, Donald Melcher (Melcher), challenged the validity of her will, arguing that she lacked the requisite testamentary capacity. The Bensons moved for summary judgment, which was granted by the district court. Melcher appealed. We affirm.

## ISSUES

[¶ 2] The issues presented in this case are as follows:

1. Whether the district court's decision to determine the validity of McLean's will before addressing issues raised in a connected civil action was correct?

2. Whether the district court properly granted summary judgment in favor of the Bensons?

3. Whether the Bensons are entitled to recover attorney's fees under W.R.A.P. 10.05?

## FACTS

[¶ 3] We had prior opportunity to examine the facts of this case in *Estate of McLean ex rel. Hall v. Benson,* 2003 WY 78, 71 P.3d 750 (Wyo.2003). Although additional details will be provided where necessary, the essential facts are the same:

In 1992, Thelma McLean (McLean) was "befriended" by EuGene Benson (Benson) and his daughter, Heather. Both Bensons were stockbrokers. From 1992 until her death in 1998, McLean transferred practically all of her financial dealings, not to mention most of her assets, to the Bensons. In 1994, McLean signed a Last Will and Testament that had been prepared by Benson's brother-in-law, an attorney, and typed by Heather. The Bensons were the beneficiaries under the will.

In 1999, McLean's nephew, David Hall (Hall), petitioned the district court for appointment as personal representative of McLean's intestate estate. Hall then immediately filed, on behalf of the estate, a civil action against the Bensons, alleging breach of fiduciary duties, undue influence, constructive fraud, constructive trust, breach of contract, breach of the duty of good faith and fair dealing, fraud, negligent misrepresentation, intentional interference with expected inheritance, civil conspiracy, negligence, and fraudulent transfers. Several months later, Benson filed the purported Last Will and Testament of McLean, and eventually sought appointment as personal representative of McLean's testate estate.

On December 7, 2001, the district court ordered the two probate actions and the civil suit consolidated. Three months later, after summary judgment motions left most of the issues extant, the district court signed an Order Admitting Will to Probate and Appointing Personal Representative, and a separate Order on Motion for Summary Judgment. Hall became personal representative in both probates. All proceedings in the civil action were stayed pending resolution of any will contest in the combined probate.

*Id.,* 2003 WY 78, ¶¶ 2–4, 71 P.3d at 751–52. Hall appealed the order admitting the will to

probate, and we dismissed the appeal because it was not a final appealable order. *Id.*, 2003 WY 78, ¶ 11, 71 P.3d at 753–54.

[¶ 4] On June 14, 2002, while the appeal was still pending before this Court, Melcher, McLean's only grandchild and the only potential heir [1] under Wyoming's intestacy statute, filed an Objection to the Order for Admittance of Will to Probate and a Petition to Set Aside and Contest the Will and the Validity of the Will. Melcher asserted that McLean's will should not be admitted to probate, maintaining essentially the same claims raised in Hall's civil action. Melcher argued that McLean lacked the "mental faculties and capacities to fully understand the ramifications and provisions of the document" at the time the will was executed. He maintained that when McLean executed the will, she was legally blind, that she had no legal representation, that the Bensons had unduly influenced her and used fraudulent statements to induce her to execute the will, that Mr. Benson had breached his fiduciary duty to McLean as her financial advisor, and that the Bensons had breached the covenant of good faith and fair dealing.

[¶ 5] In response to Melcher's motion, the Bensons asked the district court to establish the validity of McLean's will by ruling on their previously-filed motion for summary judgment, which motion had been stayed pending a ruling from this Court on the previous appeal. On June 26, 2003, we issued our opinion dismissing the appeal, and shortly thereafter the district court heard the Bensons' motion for summary judgment. While the record does not contain a transcript of that proceeding, the district court's order reveals that although Melcher's attorney received adequate notice, he did not appear at the hearing.[2] The motion for summary judgment was granted and McLean's will was admitted to probate. Melcher filed a timely appeal.

**1.** Hall became involved in McLean's estate with the understanding that he would be eligible to inherit, but it later became clear that under Wyoming's intestacy laws, Melcher was the only heir. Although Hall retained his position as the personal representative for McLean's estate, the district court ruled that because he was not an

## STANDARD OF REVIEW

[¶ 6] Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Mountain Cement Co. v. Johnson*, 884 P.2d 30, 32 (Wyo.1994); W.R.C.P. 56(c). We review a summary judgment in the same light as the district court, using the same materials and following the same standards. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Four Nines Gold, Inc. v. 71 Constr., Inc.*, 809 P.2d 236, 238 (Wyo.1991). Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997); *England v. Simmons*, 728 P.2d 1137, 1141 (Wyo.1986). We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question. *Sammons v. American Auto. Ass'n*, 912 P.2d 1103, 1105 (Wyo. 1996); *Blagrove*, 934 P.2d at 1275.

*Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999). We will examine other aspects of the summary judgment standard in the discussion section of this opinion.

## DISCUSSION

[¶ 7] This appeal is from the district court's determination of Probate No. 5230, which is actually three consolidated cases: Probate No. 5359, Probate. No. 5230, and Civil Action No. 26947. Melcher asserts that because the district court had previously recognized the existence of genuine issues of material fact in the civil action, those issues should not have been disposed of when the

"interested person," Hall did not have standing to challenge the validity of the will.

**2.** On appeal, Melcher's attorney explained that his absence was the result of a scheduling error. Apparently he scheduled the summary judgment hearing for August 22, rather than August 12.

district court granted summary judgment to the Bensons in the consolidated cases. He directs our attention to the following language in the district court's ruling in the civil action:

Given numerous genuine issues of material fact, as discussed above, this Court finds it improper to grant summary judgment with respect to the claims of: breach of fiduciary duty, undue influence, fraud, constructive fraud, constructive trust, breach of contract, breach of implied covenant of good faith and fair dealing, civil conspiracy, negligence, and punitive damages.

Melcher argues that the same issues remained after the three cases were consolidated, and thus the district court should not have disposed of them in the subsequent summary judgment.

[¶ 8] The district court addressed another issue in its decision letter, even though Melcher did not present this argument in his response to the Bensons' motion for summary judgment or at the hearing:

The validity of Ms. McLean's Will becomes important because any assets that might be ordered returned pursuant to the [civil action] would go to her Estate for distribution to her heirs. The named beneficiaries in her Will are Eugene and Heather Benson. Thus, they would stand to inherit that which they are accused of having stolen if her Will is determined to be valid. This would essentially moot any further proceedings under [the civil action].

We agree with the district court that, in the instant case, the more prudent and judicially economic approach was first to determine the validity of McLean's will, rather than spend considerable time and resources deciding the civil action, the outcome of which would have virtually no effect on the ultimate result.

### *The Validity of McLean's Will*

■ [¶ 9] Melcher claims that McLean's will was the product of the Bensons' undue influence, and that McLean lacked the requisite testamentary capacity. Melcher further contends that the Bensons never satisfied their burden of establishing a prima facie case for summary judgment, and therefore

the burden never shifted to him to refute their evidence regarding McLean's capacity. The Bensons counter that they satisfied their summary judgment burden, and that as a matter of law, McLean had the necessary testamentary capacity and was not subject to undue influence.

■ [¶ 10] Unless the testator's incompetence is established by proof or admission, a presumption of testamentary capacity exists where a will is duly executed and properly attested. *In re Estate of Schlueter*, 994 P.2d 937, 939 (Wyo.2000). We have articulated the following standard in determining testamentary capacity:

"Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts, and to comprehend these elements in their relation to each other, and a charge in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must be able to appreciate the relation of these factors to one another, and to recollect the decision which he has formed."

*In re Estate of Schlueter*, 994 P.2d at 939 (*quoting Matter of Estate of Roosa*, 753 P.2d 1028, 1032 (Wyo.1988)). To challenge a testator's competence, and the validity of a will, the opponent must demonstrate that when the will was executed, the testator was not able to comprehend "(1) the extent and nature of the estate, (2) the identity of the beneficiaries and their relationship, whether by blood or circumstances, to the testator, and (3) the nature of the testamentary act, that it is a disposition of property to take effect at death." *In re Estate of Schlueter*, 994 P.2d at 939 (*quoting Matter of Estate of Roosa*, 753 P.2d at 1032). Evidence of the testator's declining mental and physical health before the will was executed, or dur-

ing the years later, is irrelevant, as the testator must only possess testamentary capacity at the time the will is executed. *In re Estate of Schlueter*, 994 P.2d at 940; *Matter of Estate of Loomis*, 810 P.2d 126, 129 (Wyo. 1991).

 [¶ 11] With respect to the claim of undue influence, we have stated that the party alleging the exercise of undue influence must present competent evidence establishing:

"(1) the relations between the one charged with exercising the undue influence and the decedent affording the former an opportunity to control the testamentary act; (2) that the decedent's condition was such as to permit * * * subversion of h[er] freedom of will; (3) that there was activity on the part of the person charged with exercising undue influence; and (4) that such person unduly profited as beneficiary under the will."

*Matter of Estate of Loomis*, 810 P.2d at 129 (*quoting In re Nelson's Estate*, 72 Wyo. 444, 266 P.2d 238, 252 (1954)). The will contestant bears the burden of proving undue influence by presenting evidence clearly demonstrating that the testator's free agency was destroyed and that his volition was substituted for that of another. *Matter of Estate of Loomis*, 810 P.2d at 128; *see also Matter of Estate of Obra*, 749 P.2d 272, 277 (Wyo.1988) and *Matter of Estate of Brosius*, 683 P.2d 663, 666 (Wyo.1984). We have stated that "[i]n Wyoming, a will deliberately made by a person of sound mind is not to be lightly set aside." *Matter of Estate of Loomis*, 810 P.2d at 128; *see also Matter of Estate of Brosius*, 683 P.2d at 666.

[¶ 12] While Melcher bore the burden of overcoming the presumption of testamentary capacity and demonstrating undue influence, the Bensons, as the moving party, had the initial burden of presenting a *prima facie* case for summary judgment. *Coates v. Anderson*, 2004 WY 11, ¶ 5, 84 P.3d 953, 956 (Wyo.2004) (*quoting Mize v. North Big Horn Hosp. Dist.*, 931 P.2d 229, 232 (Wyo.1997) and *Johnson v. Soulis*, 542 P.2d 867, 871–72 (Wyo.1975)). The Bensons provided substantial evidence regarding McLean's capacity at the time she executed her will, including several affidavits wherein the affiants attested to McLean's competency. John R. Deti, the attorney who drafted McLean's will, stated that during their meetings, McLean was "coherent, alert and very assertive about her wishes," and that she "asked many questions through out the drafting process which exhibited her understanding of the meaning of her Will and the manner in which she wished to distribute[ ] her estate." Deti also stated that although McLean had difficulty seeing the document, she was able to read it. Finally, Deti averred that he was not aware of any undue influence exerted by the Bensons.

[¶ 13] In a sworn statement, McLean's treating physician, Dr. Kenneth L. Robertson, stated that after independent examination and discussion with McLean, his impression was that she was mentally and physically capable of making appropriate decisions.

[¶ 14] M. Vanay Syme, one of the witnesses when McLean executed her will, stated that she had a conversation with McLean prior to her signing her will and found her to be "competent, coherent and alert." The second witness, Charles Bryan Brodersen, stated that he "never observed Mr. Benson coerce or attempt to influence Ms. McLean in her decisions" and that "McLean seemed comfortable in making decisions independently." Likewise, Karen Gaines, the notary public present when McLean executed her will, stated that "McLean seemed competent and aware of what she was doing that day."

 [¶ 15] We find that this evidence satisfied the threshold requirement of establishing the nonexistence of any genuine issue of material fact with regard to McLean's testamentary capacity or Melcher's claim of undue influence. The burden then shifted to Melcher to present specific and substantiated evidence showing the existence of a genuine issue of material fact. *McClellan v. Britain*, 826 P.2d 245, 247 (Wyo.1992). A material fact is one which, if proven, would have the effect of establishing or refuting an essential element of the cause of action. *Baker v. Pena*, 2001 WY 122, ¶ 6, 36 P.3d 602, 605 (Wyo.2001). W.R.C.P. 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule

an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Further, we have held that conclusory statements, mere opinions, or categorical assertions of ultimate facts without supporting evidence are insufficient to establish some disputed issue of material fact. *Clark v. Industrial Co. of Steamboat Springs, Inc.,* 818 P.2d 626, 628 (Wyo.1991) (quoting *TZ Land & Cattle Co. v. Condict,* 795 P.2d 1204, 1208 (Wyo.1990) and *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987)); *Seamster v. Rumph,* 698 P.2d 103, 106 (Wyo.1985). Any evidence relied upon to "sustain or defeat a motion for summary judgment must be such as would be admissible at trial and that it should be as carefully tailored and professionally correct as any evidence which would be presented to the court at the time of trial." *Equality Bank of Evansville, Wyo. v. Suomi,* 836 P.2d 325, 330 (Wyo.1992).

[¶ 16] Melcher failed to meet this burden. His attorney did not appear at the summary judgment hearing and presented virtually no evidence refuting the above-mentioned sworn statements regarding McLean's capacity on the day she executed her will. The only factual information Melcher provided in response to the Bensons' motion was an affidavit signed by his wife [3] asserting that:

> I dated my husband for three years prior to our marriage and have personal knowledge by meeting and associating with Mrs. McLean from the summer of 1991. At such time, Mrs. McLean was determined to be legally blind. During my conversations and associations with Mrs. McLean, she was in a frail condition, both mentally and physically, and was often confused in regards to her affairs.

On appeal, Melcher attempts to construct issues of material fact with statements from the pleadings regarding McLean's mental health and the Bensons' interaction with her. The statement of Mrs. Melcher and those found in the pleadings regarding McLean's

capacity are conclusory, contain only unsubstantiated facts, and are generally irrelevant to McLean's capacity to execute her will. As such, they are insufficient to establish a disputed issue of material fact.

[¶ 17] Melcher also fails to demonstrate, as a matter of law, that he is entitled to judgment. He is unable to provide sufficient evidence to rebut the presumption of testamentary capacity or to overcome his burden of showing undue influence. While the record contains some general statements regarding McLean's mental health, the only evidence specifically addressing her testamentary capacity on the day she executed her will—which under *In re Estate of Schlueter* and *Matter of Estate of Loomis* is the only relevant time frame—demonstrates that she was competent. Melcher provides no evidence to rebut the sworn statements of those individuals who were present and witnessed McLean execute her will. Likewise, although the record contains statements indicating that the Bensons developed some relationship with McLean, the record does not clearly demonstrate that the Bensons' desires were substituted for McLean's, or that her free will was destroyed. Melcher does not provide adequate evidence to support his claims, and as a matter of law, we find that McLean possessed the requisite capacity to execute her will.

### Sanctions

[¶ 18] The Bensons claim that there is no cause for this appeal, and request that we order Melcher to pay costs and reasonable attorney fees. We decline to do so because this case does not rise to the level of "those rare circumstances where an appeal lacks cogent argument, where there is an absence of pertinent authority to support the claims of error, and/or when there is a failure to adequately cite to the record." *Amen, Inc. v. Barnard,* 938 P.2d 855, 858 (Wyo. 1997); *see also Phifer v. Phifer,* 845 P.2d 384, 387 (Wyo.1993). Although parts of Melcher's argument were lacking, we did not consider any position advanced that was not sup-

---

3. In 1996, Melcher had a brain tumor removed, leaving him a quadriplegic and unable to speak. Prior to the operation he executed a Durable

Power of Attorney appointing his wife as his agent.

ported by cogent argument or citation to pertinent authority. *Basolo v. Gose*, 994 P.2d 968, 970 (Wyo.2000).

## CONCLUSION

[¶ 19] Inasmuch as any ruling in the civil suit would be moot if McLean's will was determined to be valid, the district court properly chose to first decide the validity of McLean's will before addressing the issues raised in the civil suit. With respect to the validity of McLean's will, Melcher failed to raise any genuine issues of material fact or provide evidence establishing that McLean had been unduly influenced by the Bensons or that she lacked the requisite testamentary capacity. The district court's decision to admit the will to probate is affirmed, and the Bensons' request for sanctions is denied.