# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 91

APRIL TERM, A.D. 2014

July 22, 2014

CATHERINE MEYER, as beneficiary
of the 1999 Carlsen Family Living
Trust,

Appellant
(Plaintiff),

v.

SARA MILLER, Trustee of the 1999
Carlsen Family Living Trust,

Appellee
(Defendant).

S-13-0227

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
> M. Jalie Meinecke of Meinecke & Sitz, LLC, Cody, Wyoming

*Representing Appellee:*
> Tracy J. Copenhaver of Copenhaver, Kath, Kitchen & Kolpitcke, LLC, Powell, Wyoming

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\* Chief Justice at time of oral argument*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, **Justice**.

[¶1]    Appellant Catherine Meyer is a beneficiary of her parents' trust, and she brought an action against the trustee challenging the validity of certain amendments to it after her mother Evelyn Carlsen died.  Mrs. Carlsen, who was a settlor and also served as trustee, amended the trust on two separate occasions before she passed away, as she was permitted to do by its terms.  Appellant, who will receive less upon her mother's death because of these amendments, contends they are invalid for two reasons.  *First*, the amendments were intended to collect a debt and therefore violate the Statute of Frauds.  *Second*, Mrs. Carlsen was unduly influenced to amend the trust by her other daughters.  The district court granted the Appellee successor trustee summary judgment.  We find no disputed issues of material fact and that the trustee was entitled to judgment as a matter of law, and we therefore affirm.

## ISSUES

[¶2]    1.    Were the amendments to the trust invalid because they violated the Statute of Frauds?

    2.    Are there disputed issues of material fact as to whether Mrs. Carlsen's daughters procured the amendments through the exercise of undue influence?

## FACTS

[¶3]    In 1999, Mr. and Mrs. Carlsen established the *1999 Carlsen Family Living Trust*, naming their five daughters, Appellant Catherine Meyer, Sara Miller, Carol Carlsen, Jean Cedarquist, and Roberta Nemeth, as beneficiaries.[1]  However, the trust reserved extensive powers to Mr. and Mrs. Carlsen during their lives.  They had the right to use the trust assets as they chose, and the power to amend or revoke the trust if they elected to do so.[2]  The remaining trust assets were to be distributed to the five daughters in equal shares by Sara Miller, the successor trustee, when both of the Carlsens had died.

[¶4]    The trust was drafted by the Carlsens' attorney Dick Kahl, who was also their friend and neighbor.  The trust remained unchanged for ten years after the Carlsens executed it.  Mr. Carlsen passed away during this time frame, and Mrs. Carlsen became the sole trustee and surviving settlor.

[¶5]    At some point during the ten years after the trust was executed, Appellant convinced her mother to invest approximately $40,000.00 of its assets with a broker

---

[1] As the caption to this opinion indicates, Sara Miller is the trustee who was appointed to carry out the express terms of the trust after the death of Mrs. Carlsen.

[2] It is somewhat unclear whether they held those powers as settlors, beneficiaries, or trustees, but there is no doubt that they possessed them.

1

friend, and unfortunately, that investment shrank to approximately $20,000.00. As early as 2006, Mrs. Carlsen began telling others that she had expressed her frustration about the loss to Appellant, who would be responsible for it.

[¶6]    In the summer of 2008, Mrs. Carlsen visited three daughters who lived in Illinois. She visited Appellant for several days first, and then she stayed with her other daughter, Jean. Mrs. Carlson told Jean and another daughter Roberta that Appellant had said that the loss could be dealt with through inheritance. Jean and Roberta told their mother that it was not an issue they could address, and that she would have to deal with it through her attorney. Mrs. Carlsen asked the two to help her prepare notes reflecting her thoughts to share with attorney Kahl. Roberta put the notes in a letter to Mr. Kahl, which Mrs. Carlsen signed. Jean and Roberta told Mrs. Carlsen that she did not have to make any changes to the trust and could just leave it as originally drafted as far as they were concerned. Whether their mother wanted to follow up with her attorney was entirely up to her, in their view.

[¶7]    Mrs. Carlsen returned to her home in Powell, Wyoming after the Illinois visit. She did not discuss amending the trust with her daughters again before she met with Mr. Kahl and executed the first amendment half a year later. Before meeting with Mr. Kahl, Mrs. Carlsen was seen by her medical doctor Terry Reisner on January 26, 2009, for a checkup related to her diabetes. During this checkup, Mrs. Carlsen did not show any signs of mental confusion, and Dr. Reisner did not have any concerns about her mental faculties.

[¶8]    In February 2009, Mrs. Carlsen met with Mr. Kahl to discuss changes to the trust, and that meeting resulted in the *First Amendment to Declaration of Trust: 1999 Carlsen Family Living Trust* dated February 27, 2009. This first amendment modified the trust's terms so that "[p]rior to any other distribution under the terms of the Trust, my daughter, Catherine Meyer, shall pay to the Trust, the sum of $20,000.00, an amount owed by her to my Trust." Mr. Kahl confirmed by a later affidavit that Mrs. Carlsen was alert and mentally sharp in the meetings concerning the first amendment to the trust.

[¶9]    Shortly thereafter, Appellant came to see her mother in Wyoming.[3] On April 20, 2009, she accompanied her mother to a follow-up visit with Dr. Reisner. She expressed apprehension about Mrs. Carlsen's ability to drive and alleged forgetfulness. Prompted by these concerns, Dr. Reisner first addressed the physical aspect of Mrs. Carlsen's driving abilities, which took the remainder of the time allotted for that appointment. He scheduled a mental evaluation two days later, at which time he performed a *Folstein Mini Mental State Examination* that consisted of several questions relating to orientation, registration, attention, calculation, recall, and language. Mrs. Carlsen obtained a perfect score of 31 out of 31. Based upon the test and his interactions with her, Dr. Reisner perceived Mrs. Carlsen to be a mentally sharp eighty-two year-old.

---

[3] Appellant was unaware that Mrs. Carlsen had made the first amendment to her trust.

2

[¶10]  A few months later, in July of 2009, Mrs. Carlsen fell and fractured her pelvis and was hospitalized.  When she was released in August of 2009, three daughters from Illinois—Carol, Roberta and Jean—came to Wyoming to visit and help their sister Sara, who lived in Powell, care for their mother.  Appellant did not come to Wyoming at that time.  For a while after her injury, Mrs. Carlsen used a walker, needed oxygen at times, and was not medically cleared to drive until September of 2009.

[¶11]  In August of 2009, Mrs. Carlsen and the four daughters who were in Powell met with Mr. Kahl to discuss how the amended terms of the trust would be carried out if Appellant did not pay the $20,000.00 that Mrs. Carlsen perceived Appellant was to blame for losing.  Mr. Kahl advised Mrs. Carlsen and her daughters that she could amend the trust to include language authorizing the trustee to reduce the Appellant's trust distributions if she failed to reimburse it, which would effectively address her concerns.  Mrs. Carlsen directed Mr. Kahl to draft a second amendment adding that provision.  On August 17, 2009, Mrs. Carlsen returned to his office alone and executed the *Second Amendment to Declaration of Trust: 1999 Carlsen Family Living Trust*.  It provides as follows:

> Prior to any other distribution under the terms of the Trust, my daughter, Catherine Meyer shall pay to the Trust, the sum of Twenty thousand and no/100 Dollars ($20,000), an amount owed by her to my Trust.  In the alternative, if my daughter, Catherine Meyer, refuses to repay the sum, the Successor Trustee [Sara Miller] shall reduce the share of the trust estate of Catherine Meyer by the sum of Sixteen thousand and no/100 Dollars ($16,000).[4]

[¶12]  In March of 2012, Mrs. Carlsen passed away without making any further changes to the trust.  Her daughter Sara then became the successor trustee.  Appellant filed a petition challenging the validity of the two amendments on June 18, 2012.  The parties filed cross-motions for summary judgment, which the district court resolved in a clear and succinct decision letter dated July 3, 2013.  It denied Appellant's motion for summary judgment and granted the trustee's motion, finding as follows:

- The $20,000.00 at issue was not a "debt," but was instead a "loss."  Therefore, no one, including Appellant, had a legal duty to repay the trust.  The term "owes" as used by

---

[4] The reduction was only $16,000 because Appellant would have been entitled to $4,000 if she had paid the full $20,000.  Also, we note that the first amendment is expressly revoked by the second amendment.  However, neither the district court nor the parties raised this fact (before the district court or on appeal).  We conjecture that Appellant has challenged the validity of the former in case we were only to set aside the latter.  Because the appeal is postured in this fashion, we will address the validity of both amendments.

Mr. Kahl in drafting the amendments was merely stylistic, and did not suggest that Mrs. Carlsen was seeking repayment of a debt.

- Because the terms of the trust did not seek repayment of a debt, Appellant's statute of frauds argument failed. Mrs. Carlsen had the right to dispose of the trust property as she wished, and she properly did so by the amendments to the trust.

- The evidence presented by Appellant was insufficient as a matter of law to constitute clear proof of undue influence. The facts that Mrs. Carlsen's daughters helped prepare notes in the summer of 2008 concerning the first amendment and that she suffered a fractured pelvis in July 2009 did not raise a genuine issue of material fact as to whether she was subjected to undue influence. The court concluded that "[u]ltimately, even if M[r]s. Carlsen consulted her daughters about the amendments, there is no evidence to suggest that she was not in full possession of her mental faculties," as evidenced by scoring a perfect 31 out of 31 on her mental capacity exam.

[¶13] This appeal was timely perfected.

## STANDARD OF REVIEW

[¶14] To the extent that the issues presented by Appellant raise questions of law, our review is *de novo*. *Parkhurst v. Boykin*, 2004 WY 90, ¶ 15, 94 P.3d 450, 457 (Wyo. 2004) ("The determination that a given agreement is within the statute of frauds is a question of law which we review *de novo*.").

[¶15] Our standard of review for orders granting summary judgment is well established:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. We review a grant of summary judgment deciding a question of law *de novo* and afford no deference to the district court's ruling.

*Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶ 26, 319 P.3d 116, 123-24 (Wyo. 2014) (citations omitted); *DiFelici v. City of Lander*, 2013 WY 141, ¶ 7, 312 P.3d 816, 819 (Wyo. 2013).

## DISCUSSION

### *Amendments to the Trust*

[¶16] Appellant asserts that the two amendments to the trust improperly attempt to collect a debt from her. That is, because there was never a written agreement signed by Appellant to pay back the $20,000.00 that the trust lost by investing with Appellant's friend, she contends that the Statute of Frauds renders the amendments void.[5] In her brief, Appellant relies upon the portions of the statute that require a writing to be subscribed by the party to be charged in the case of agreements which cannot be performed in one year, and to charge any person for liability arising from a representation that led to granting of credit, money or goods to another. Wyo. Stat. Ann. §§ 1-23-105(a)(i) and (vi). During oral argument, counsel for Appellant also contended that the section of the statute requiring a signed writing to hold a person responsible for the debt of another applied to invalidate the amendments. § 1-23-105(a)(ii). We find Appellant's argument unavailing.

[¶17] The record belies the claim that the losses were a debt at all, much less a debt that required a written and signed agreement under the Statute of Frauds. Indeed, Appellant concedes in her brief before us that she "never discussed repayment of $20,000.00 with

---

[5] Wyoming's Statute of Frauds states in pertinent part:

> (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:
>
> > (i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof;
> >
> > (ii) Every special promise to answer for the debt, default or miscarriage of another person;
> >
> > .  .  .
> >
> (vi) To charge any person upon, or by reason of a representation or assurance concerning the character, conduct, credit, ability, trade or dealings of another, to the intent or purpose that such other may obtain thereby, credit, money or goods.

Wyo. Stat. Ann. § 1-23-105 (LexisNexis 2013).

her mother, never promised to repay her mother $20,000.00 for any reason, and never memorialized the notion of repayment in any manner in writing." Consistent with her argument, Appellant testified in her deposition:

> There was not an issue between my mother and I regarding any money. I don't know where it's really coming from. I never borrowed money. She never loaned me any money. And this would go back to my dad, into dad and mother's estate. I never borrowed or was loaned money from any parent. I don't know why I owe money. And there is no explanation of that in the documents.

As the district court aptly found, Appellant's "testimony is indicative of this categorization" that the "monies in this case are not so much a 'debt' as they are a 'loss.'"

[¶18] "The meaning of a trust is determined by the same rules that govern the interpretation of contracts. In interpreting a trust, our primary purpose is to determine the intent of the settlor." *Evans v. Moyer*, 2012 WY 111, ¶ 21, 282 P.3d 1203, 1210 (Wyo. 2012). By the terms of the trust, Mrs. Carlsen had the absolute right as trustee or settlor to dispose of its assets as she saw fit during her lifetime. *Matter of Estate of Brosius*, 683 P.2d 663, 665 (Wyo. 1984). The record reflects that she did so by changing the trust distribution based upon her belief that it was fair to adjust Appellant's share to restore the portion of the trust assets lost to the other beneficiaries. The effect of the changes was to give the four other daughters $4,000 each. The district court was correct when it determined on the record before it that the term "owes" as used by Mr. Kahl was merely a way of capturing Mrs. Carlsen's belief as to the proper disposition to be made of the trust assets. As Mr. Kahl's uncontradicted affidavit explained:

> 6. I clearly understood that Evelyn Carlsen had not loaned any money to Catherine Meyer or otherwise provided money to Catherine Meyer for her personal use but rather, Catherine Meyer had persuaded Evelyn Carlsen to make an investment with a broker friend of Catherine Meyer, which ultimately resulted in a financial loss to Evelyn Carlsen. This was upsetting to Evelyn and it is in that context that Evelyn Carlsen indicated Catherine Meyer had promised to repay to Evelyn Carlsen $20,000.00 of the lost investment. Evelyn Carlsen indicated that it was only fair to the remainder of the children to require Catherine Meyer to pay the $20,000.00 she had promised to pay and therefore she asked me to include that provision in her Trust. Evelyn Carlsen was not confused by this and gave me no indication that any other person was in any way suggesting, recommending, encouraging or

6

influencing her to revise her Trust to require the repayment from Catherine Meyer.

> 7. I drafted the First Amendment to Declaration of Trust . . . . The documents states that "Catherine Meyer shall pay to the trust the sum of $20,000.00, an amount owed by her to my trust and the Successor Trustee is directed to collect such sum . . .". This terminology is terminology I selected and was never intended to represent a legal debt owed by Catherine Meyer, but rather, the $20,000.00, being an amount owed, was in reference to the amount Catherine Meyer had indicated she would repay as a result of the poor performing investment she had persuaded Evelyn to make with Catherine's broker friend.

[¶19] The record presents no genuine issue of material fact which would implicate the Statute of Frauds. We therefore need not consider the substance of the three sections of the statute upon which Appellant relies. Mrs. Carlsen simply elected to amend the trust to redistribute its assets as she thought fair and appropriate in light of the losses, as she had the right to do. *Brosius*, 683 P.2d at 665 ("We have often said that a testator [or settlor] who is legally qualified and who acts in accordance with the law has an absolute right to dispose of h[er] property after death as [s]he sees fit."). The district court did not err in concluding that the amendments were valid because their terms did not constitute a repayment of a debt which might arguably invoke the Statute of Frauds.

## *Undue Influence*

[¶20] Under Wyo. Stat. Ann. § 4-10-407 (LexisNexis 2013), "a trust is void to the extent its creation was induced by fraud, duress or undue influence." Undue influence sufficient to render a trust invalid must be such as to vitiate the settlor's freedom and ability to implement her own choices. *Kelly v. McNeel*, 2011 WY 79, ¶ 18, 250 P.3d 1105, 1110 (Wyo. 2011).

[¶21] In order to establish that the amendments to the trust were the result of undue influence, Appellant had to establish: (1) the relations between the other daughters and Ms. Carlsen afforded the former an opportunity to control disposition of the trust assets; (2) that Mrs. Carlsen's condition was such as to permit subversion of her freedom of will; (3) that there was activity on the part of the other daughters; and (4) that the other daughters unduly profited by receiving more from the trust. *Retz v. Siebrandt*, 2008 WY 44, ¶ 19, 181 P.3d 84, 91 (Wyo. 2008); *Kelly*, ¶ 18, 250 P.3d at 1110. Appellant therefore bore the burden of proving undue influence by presenting evidence clearly demonstrating that Mrs. Carlsen's free agency was destroyed and that her volition was replaced by that of her other daughters. *Kelly*, ¶ 18, 250 P.3d at 1110. In Wyoming,

7

estate planning documents "deliberately made by a person of sound mind will not be lightly set aside." *Id.*; *see also In re Estate of McLean*, 2004 WY 126, ¶ 11, 99 P.3d 999, 1004 (Wyo. 2004).

[¶22] Although Appellant had the burden of demonstrating undue influence, Appellee bore the initial burden to make a *prima facie* showing that summary judgment was appropriate. *See Retz*, ¶ 20, 181 P.3d at 91; *see also McLean*, ¶ 12, 99 P.3d at 1004. We find that the trustee made a *prima facie* case through affidavits and deposition testimony:

- Attorney Kahl, who drafted Mrs. Carlsen's trust and amendments, swore in his affidavit that Mrs. Carlsen "was very alert and mentally sharp" during the meetings concerning the amendments, and he "saw no signs of confusion, loss of memory or hesitancy of any kind in the questions she asked and the changes she wanted to make to her trust." Mr. Kahl confirmed that she was very firm about her wishes and "appeared to have a complete understanding of the changes she was requesting and the basis for them." He also stated that he was the one that advised Mrs. Carlsen of the mechanism to reduce Appellant's distribution under the trust and she "clearly understood how the change would be implemented." When Mrs. Carlsen executed the amendments she was alone, and "there were no other persons who at any time appear to have persuaded or influenced her to make the revisions she requested." Mr. Kahl averred that "[a]t no time during my meetings with Evelyn Carlsen did she ever demonstrate any hesitancy in the changes she was making to the trust nor did she express concerns of any kind that led me to believe she may be making the changes for any reason other than of her own free and voluntary choice." Simply put, Mr. Kahl was "confident that the amendments to the 1999 Carlsen Family Living Trust were the result of the voluntary and uninfluenced decision of Evelyn Carlsen."

- In his deposition, Dr. Reisner, Mrs. Carlsen's treating physician, stated that during his visits with Mrs. Carlsen, he saw no indication that she was mentally infirm. He explained that she scored a perfect 31 out of 31 on a mental examination, which verified his assessment that she was not suffering from dementia or any other type of mental impairment or disability. Dr. Reisner opined that she was mentally and physically capable of making appropriate decisions concerning her estate, and that she understood the significance of amending her trust as she did.

- In sworn affidavits, Mrs. Carlsen's daughters—Carol, Roberta, Sara, and Jean—all stated that their mother was not unduly influenced to make the first or second amendments to her trust. They were not even aware that their mother had made the first amendment until well after it was executed and plainly could not have improperly influenced her to do so. All four daughters attended a meeting with Mrs. Carlsen and her attorney in August 2009, and confirmed that in light of Mrs. Carlsen's concerns, Mr. Kahl recommended the second amendment to reduce Appellant's distributable share. After that meeting, Mrs. Carlsen again met with Mr. Kahl alone

and executed the second amendment. There is no indication in the record that the four daughters accused of exercising undue influence took any action to cause her to return to Kahl's office and sign the amendment.

[¶23] This evidence more than satisfied the threshold requirement to establish the nonexistence of any genuine issue of material fact with regard to Appellant's claim of undue influence. *C.f., McLean*, ¶¶ 12-16, 99 P.3d at 1004-05 (concluding that affidavits from attorney, treating physician, and others who witnessed the execution of the document established capacity and warranted summary judgment). The burden then shifted to Appellant to present specific and substantiated evidence raising a genuine issue of material fact. *Retz*, ¶ 26, 181 P.3d at 92; *McLean*, ¶ 15, 99 P.3d at 1004.

[¶24] After a comprehensive review of the record, we conclude that Appellant failed to meet her burden. In reviewing an order granting a motion for summary judgment, courts "must view the evidence presented through the prism of the substantive evidentiary burden," which in the instant case requires clear proof of undue influence. *Retz*, ¶ 30, 181 P.3d at 93. Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." W.R.C.P. 56(e). "A material fact is one which, if proven, would have the effect of establishing or refuting an essential element of the cause of action." *McLean*, ¶ 15, 99 P.3d at 1004. "Further, we have held that conclusory statements, mere opinions, or categorical assertions of ultimate facts without supporting evidence are insufficient to establish some disputed issue of material fact." *Id.,* ¶ 15, 99 P.3d at 1005.

[¶25] Appellant failed to submit evidence sufficient as a matter of law to clearly demonstrate that Mrs. Carlsen's free agency was destroyed and that her volition was overborne by the will of her daughters. For starters, Appellant did not make any showing that Mrs. Carlsen was in a condition that permitted subversion of her own free will. Appellant offers general conclusory statements that her mother was "in frail health," but those claims are not supported by the record. Appellant provided no evidence to rebut the sworn statements of Mr. Kahl, Dr. Reisner, and others, and thus did not raise a genuine issue of material fact. The record reflects that the execution of both amendments occurred when Mrs. Carlsen was alone with her attorney of many years, who had nothing to gain from the transaction. We have previously cited respectable secondary authority as to the significance of independent legal advice in disputes such as these:

> Independent or disinterested advice is legitimate and appropriate, and the testator's receipt of independent competent advice is relevant to determining whether there was undue influence, including particularly independent advice from attorneys or investment counselors. The lack of

advice from an independent attorney may also be a factor in determining whether there was undue influence.

*Kibbee v. First Interstate Bank*, 2010 WY 143, ¶ 48, 242 P.3d 973, 989 (Wyo. 2010) (quoting 79 Am.Jur.2d *Wills* § 390 (2002)).

[¶26]   Although the record contains evidence that Mrs. Carlsen consulted with some of her daughters concerning the amendments on isolated occasions, it does not contain sufficient evidence to raise a genuine issue of material fact as to whether her daughters' desires were substituted for hers, or that her free will was destroyed.  It is not enough to show that the other daughters may have had a motive and an opportunity to exert improper influence; there must be evidence that they did in fact exert influence sufficient to control Mrs. Carlsen's actions and subvert her will to the extent that the instrument is not the distribution that she intended.  *Retz*, ¶ 30, 181 P.3d at 93.  Even viewing the facts in the light most favorable to Appellant, there are no disputed material facts which would require a trial to determine whether Mrs. Carlsen was subjected to undue influence.  The district court correctly concluded that the trustee was entitled to judgment as a matter of law.

## CONCLUSION

[¶27]   The district court correctly found that the terms of the trust's amendments did not violate the Statute of Frauds.  Mrs. Carlsen had the right to dispose of the trust assets as she did by its terms.  The district court also properly determined that there were no genuine issues of material fact with regard to Appellant's undue influence claim, and that Appellee was entitled to judgment as a matter of law.  We therefore affirm in all respects.