# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 18

### OCTOBER TERM, A.D. 2016

### February 27, 2017

IN THE INTEREST OF: NP, a minor child,

CP,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-16-0112

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
> Timothy C. Cotton of Timothy C. Cotton, PC, Casper, Wyoming.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; Misha E. Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Shawnna M. Herron, Senior Assistant Attorney General. Argument by Ms. Herron.

*Representing Guardian Ad Litem:*
> Dan S. Wilde, Deputy State Public Defender, and Aaron S. Hockman, Chief Trial and Appellate Counsel, Wyoming *Guardian Ad Litem* Program, a division of the Office of the State Public Defender.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Mother challenges the juvenile court's finding that she neglected her seventeen-year-old son, NP.  She contends that the juvenile court improperly denied her motion for jury trial because, although she did not file a jury demand, she called the judge's chambers and the clerk of court informing them that she wanted a jury trial, and she contends that there was insufficient evidence to support the finding of neglect.  We affirm.

## *ISSUES*

[¶2]    1.    Did Mother waive her right to a jury trial when she failed to timely file a jury demand?

2.    Was there sufficient evidence for the juvenile court to determine that Mother neglected NP?

## *FACTS*

[¶3]    At the time of the events giving rise to this matter, NP was approximately seventeen-and-a-half years old and attended Kelly Walsh High School.  He had been diagnosed with Asperger's Syndrome, attention deficit hyperactivity disorder, oppositional defiance disorder, obsessive compulsive disorder, depression, and anxiety, but was relatively high functioning.  CP, NP's mother (Mother), is a single mother of six children, including NP.

[¶4]    The evening of December 14, 2015, NP and his brother were attending swim team practice, and Mother had returned to Casper from Sheridan, where she had a meeting earlier that morning.  Mother went to Kelly Walsh High School to check on NP because NP had been skipping practice.  Mother testified that when she got there, NP gave her "a dirty look and ignored" her.  She could tell that NP had had a rough day and noticed that he had stopped swimming.  A swim coach asked if he was OK and NP "lashed out at her verbally."  When Mother reprimanded NP for his behavior, NP began calling her names.  One of the coaches asked him to "take it outside."  NP got out of the pool, removed his flippers and mask, and went outside of the pool area and into the corridor with Mother.

[¶5]    There, the situation escalated.  School custodian Duane Stover testified that around 4:30 p.m. he heard yelling in the lobby of the swimming pool, believed the disturbance was between students, and headed toward them to intervene.  When he got closer, he saw Mother "[y]elling, shouting, screaming" with NP backed into a corner.  According to Mr. Stover, NP did not yell back.  However, when Mother grabbed NP by the arm to take him outside to her car, he broke free of her grasp and ran further into the building.

[¶6]    Mother testified that once NP ran into the building, she attempted to run after him, but he was gone; she then went back into the pool area and told her other son that she would return when practice was over.  She went home to check on her other children.  Mother returned twice, once at the end of practice to pick up NP's younger brother, and again with her neighbor to look for NP.  When they could not locate NP in the school, Mother called the police and then went home to her other children.

[¶7]    At approximately 7:00 p.m., Casper police officers Adrian White and Jeff Bullard responded to a call from dispatch notifying them of a missing male juvenile who was last seen when he ran off into Kelly Walsh High School. It was reported that NP was seventeen, had autism, and was only wearing swim trunks at the time.  Officer White testified that because he needed a better physical description of NP, he called Mother, who was "belligerent" on the phone and repeatedly called him a "n*****."  Officer White hung up before getting a description of NP.  The officers searched the school and eventually found NP sleeping in a bathroom, wrapped from head to toe in toilet paper. After locating NP, the officers took him to the swimming pool locker room where he had left his bag containing his clothes.  They were unable to find his bag or his clothes.  It was a very cold and snowy evening, so swim coaches who remained on the pool deck gave NP their sweatshirt and sweatpants to wear, and the officers found a pair of shoes in the school's lost and found.

[¶8]    It was snowing heavily when Officer Bullard walked NP to the door of his home. He rang the doorbell and knocked several times, receiving no answer for over a minute. Mother then opened the door and said, "What the f*** do you want?"  Officer Bullard testified regarding what happened next:

> [Officer Bullard]: And I was wearing a Casper Police Department uniform.  I was easily identified as a police officer.  I had [NP] standing right next to me.  I said, you know, [CP], if I may, may we step inside so I can talk with you about what's going on with [NP] tonight?
>
> And she said, No, you may not, get the [f***] off my property.
>
> So at that time, she began to slam the door, and I stuck my right foot in the door, used my foot to block the door from it being shut.
>
> Q.    [Attorney for the State]: Why did you do that?

2

A. Because I wanted to continue my conversation with [CP]. I wanted to give her options. I wanted to explain that, you know, there were different things that could have occurred that night besides him coming home immediately, recognizing that she might have needed a time-out, [NP] might have needed a time-out. We engineer those things all the time in the course of our duties, taking kids to YCC [Youth Crisis Center] or other family members or we research other options. And recognizing that there had been a disturbance that night, I was open to the idea of discussing other options.

Q. So you stuck your foot in the door. What happened next?

A. She began throwing herself against the inside of the door, screaming. After about two bashes on the inside of the door, I pulled my foot out of [the] door and I knocked on the door. And I said, [CP], be rational, let's talk about this. And she screamed at me, [g]et the [f***] off my property.

At that point, I turned around and I got on my radio and I asked dispatch to find out if there was room at YCC for [NP].

Officer Bullard checked NP into the YCC and attempted to contact Mother two more times via telephone. There was no answer or voicemail. At that point, he took protective custody of NP and called DFS.

[¶9] The next day, the State filed a petition alleging that Mother had neglected NP. At her January 6, 2016 initial hearing, Mother denied the allegations, and the juvenile court advised Mother of her right to a jury trial and told her that she could demand a jury trial by "filing a jury trial demand within ten days" of the hearing. The court also appointed an attorney to represent Mother, and that attorney entered an appearance the following day.

[¶10] Mother's jury demand was due on January 21, 2016. Mother did not orally request a jury trial at her initial hearing, and failed to file a written demand by the deadline, but on February 5, 2016, Mother filed a Motion for Jury Trial. In her motion and at the hearing on the matter, Mother contended that she had called the court's office and the clerk of the district court within the prescribed time period to request a jury trial. The State objected to the motion, and the court rejected Mother's request. An

3

adjudication hearing was held on February 23, 2016, after which the court adjudicated NP as neglected by Mother. Mother timely appealed.

### STANDARD OF REVIEW

[¶11] The question of whether Mother waived her right to a jury trial raises questions of statutory interpretation and constitutional rights. Accordingly, our review is de novo. *In re CRA*, 2016 WY 24, ¶ 15, 368 P.3d 294, 298 (Wyo. 2016). Our rules of statutory construction are well known:

> This court interprets statutes by giving effect to the legislature's intent. . . . We begin by making an inquiry relating to the ordinary and obvious meaning of the words employed according to their arrangement and connection. . . . We give effect to every word, clause, and sentence and construe together all components of a statute in *pari materia*. . . . If a statute is clear and unambiguous, we simply give effect to its plain meaning. . . .
>
> . . . .
>
> We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole. Each word of a statute is to be afforded meaning, with none rendered superfluous. Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended. If the meaning of a word is unclear, it should be afforded the meaning that best accomplishes the statute's purpose.

*In re MN*, 2007 WY 189, ¶ 4, 171 P.3d 1077, 1079-80 (Wyo. 2007) (internal citations omitted).

[¶12] Our review of the sufficiency of evidence to sustain a finding of neglect is governed by the following principles: First, we give considerable deference to the trial court's determination because it has the advantage to judge the demeanor and intelligence of the witnesses; second, we examine the evidence in the light most favorable to appellee and resolve all conflicts in evidence for appellee; and third, we assume as true the evidence in appellee's favor, disregard entirely appellant's evidence in conflict with appellee's evidence, and give to appellee's evidence every favorable inference that may fairly be drawn. *In re GC*, 2015 WY 73, ¶ 18, 351 P.3d 236, 242 (Wyo. 2015) (citing *In re MC*, 2013 WY 43, ¶ 30, 299 P.3d 75, 81 (Wyo. 2013)); *In re "H" Children*, 2003 WY 155, ¶ 54, 79 P.3d 997, 1012 (Wyo. 2003).

## DISCUSSION

### I. Did Mother waive her right to a jury trial when she failed to timely file a jury demand?

[¶13] Mother failed to file a timely demand for a jury trial and did not orally request a jury trial on the record at her initial hearing. Mother argues that because she called the court and notified it that she wanted a jury trial, she did not waive her right to a jury trial. The State takes the position that Mother waived her right to a jury trial when she failed to timely file a written jury demand.

[¶14] Wyoming's statutes confer the right to a jury trial in juvenile proceedings:

> (b) A party against whom a petition has been filed or the district attorney may demand a trial by jury at an adjudicatory hearing. . . . Demand for a jury trial must be made to the court not later than ten (10) days after the party making the demand is advised of his right to a jury trial at the initial hearing. . . . Failure of a party to demand a jury is a waiver of this right.

Wyo. Stat. Ann. § 14-3-423(b) (LexisNexis 2015). Mother contends that the legislature did not choose to require a written jury demand when it used the language that "[d]emand for a jury trial must be made to the court" and omitted any language requiring a writing. Wyo. Stat. Ann. § 14-3-423(b). She contrasts § 14-3-423(b) with W.R.C.P. 38, which provides:

> (b) *Demand.* —
>     (1) By Whom; Filing. — Any party may demand a trial by jury of any issue triable of right by a jury by (A) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after service of the last pleading directed to such issue, and (B) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.

[¶15] While the legislature did not specify that the demand must be made in writing in § 14-3-423(b) of the Child Protection Act, Wyo. Stat. Ann. §§ 14-3-401 through 14-3-

441 (LexisNexis 2015), the Rules of Civil Procedure apply in juvenile court.[1] Rule 38 sets forth the manner in which a "demand" may be made and requires that it be in writing.

[¶16] Our rules of statutory interpretation require that we read Wyo. Stat. Ann. § 14-3-423(b) and W.R.C.P. 38 together, and where they conflict, we apply the more specific provision. *In re Patel*, 2010 WY 147, ¶ 10, 242 P.3d 1015, 1019 (Wyo. 2010) (applying statute where civil rules did not address procedure for service of writ of execution); *Olsen v. State*, 2003 WY 46, ¶ 168, 67 P.3d 536, 596 (Wyo. 2003) ("[W]here a general statute and a specific statute speak to the same concern, precedence is given to the terms of the more specific statute."); *Wrecking Corp. of Am., Inc. v. Jersey Welding Supply, Inc.*, 463 A.2d 678, 679 (D.C. 1983) (relying on rules of civil procedure where statute pertaining to writ procedure did not include procedure for service). Accordingly, the Rule 38 process to request a jury trial applies to proceedings under the Child Protection Act to the extent it does not conflict with Wyo. Stat. Ann. § 14-3-423(b). In order to preserve the right to a jury trial at an adjudicatory hearing, the requesting party must demand a jury trial no later than ten days after the requesting party is advised of his or her right to a jury trial at the initial hearing, and the demand must be in writing and filed and served in accordance with the Rules of Civil Procedure.[2] The failure to do so is a waiver of the right to a jury trial.

[¶17] Our reading of these provisions is consistent with the language used by the juvenile court at the initial hearing. The court informed Mother that she "can demand a trial by jury by ***making and filing*** a jury trial demand within ten days from today's date." (Emphasis added.) Because an oral request cannot be filed, it is implicit in the court's instruction to Mother that her demand would have to be in writing.

[¶18] At the hearing on her motion, Mother told the court that within ten days after her initial hearing she called the court's secretary and the clerk of court's office and, among other things, requested a jury trial. We note that those statements were not made under oath and there is no affidavit attesting to these facts. Nevertheless, even assuming that Mother did make these communications, a call to the clerk's office or the judge's secretary cannot suffice for a jury demand. The role of the clerk is to keep books and records as provided by statute. *See* Wyo. Stat. Ann. §§ 5-3-202 through 5-3-212 (LexisNexis 2015); *see also* W.R.C.P. 77(c) and (d); W.R.C.P. 79; W.R.Cr.P. 56. There

---

[1] Juvenile court proceedings are civil in nature, 14 Am. Jur. Trials 619 (originally published in 1968, updated December 2016), and while we have recognized that "[a]buse and neglect cases are not routine civil actions[,]" the Rules of Civil Procedure are applicable to them. *In re HLL*, 2016 WY 43, ¶¶ 22-25, 372 P.3d 185, 189-90 (Wyo. 2016); *In re GC*, 2015 WY 73, ¶ 27, 351 P.3d at 244; *In re MC*, 2013 WY 43, ¶ 44, 299 P.3d 75, 84-85 (Wyo. 2013).

[2] Wyo. Stat. Ann. § 14-3-423(b) modifies Rule 38 in other ways not relevant to the issues presented in this case. For example, Rule 38(b)(2) requires jury demands to be accompanied by a fee, while the statute provides that no deposit for jury fees is required.

6

is nothing in the statutes granting authority to the clerk to record verbal requests, and allowing such a practice would undermine the authenticity of records the clerk is charged with maintaining. Similarly, the role of the judge's secretary does not encompass making a record of parties' oral requests for jury trials.

[¶19]  Based upon our de novo review, we conclude that Mother waived her right to a jury trial when she failed to file a demand within the ten-day time frame required by statute. We affirm the juvenile court's denial of her Motion for Jury Trial.

## II.  Was there sufficient evidence for the juvenile court to determine that Mother neglected NP?

[¶20]  Mother next argues that there was not sufficient evidence to support the juvenile court's finding that NP was neglected. The Child Protection Act defines neglect as "a failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being." Wyo. Stat. Ann. § 14-3-202(a)(vii) (LexisNexis 2015). At trial, the State had the burden of proving neglect by a preponderance of the evidence. *In re "H" Children*, 2003 WY 155, ¶ 54, 79 P.3d at 1012-13.

[¶21]  After hearing the evidence, the juvenile court, stressing its reliance on the burden of proof and the statutory definition of neglect, ruled that Mother had neglected NP. The court found:

> And in this case, we have a child who was under the age of majority. Agreeably, he may be 17 years of age, but he is a child within the definition of the statutes. We have [Mother] responsible for the child's welfare. I don't think that's disputed. And we have a failure and refusal to provide the adequate care and supervision, at least under some of the circumstances that were presented. And surely at the point in time when the door was closed on the law enforcement officer who was attempting to deliver [NP] back to his mother's custody and attempting to obtain additional information, attempting to communicate, all of which were matters that surely I wish had been handled a little bit differently, but clearly reflect a refusal of [Mother] to undertake the care and supervision of NP at that point in time.

The juvenile court also found that Mother's "acts and decisions to not answer questions of law enforcement, to refuse to communicate, to refuse the return of the child to the residence, to refuse the door to even be opened . . . and allow for the child to be returned to her care" were deliberate. Finally, the court gave weight to the fact that NP had

7

Asperger's Syndrome and other conditions that "add to what was really needed to provide adequate care and supervision . . . ."

[¶22] Mother argues that the juvenile court should have given some weight to the fact that she "was well aware that the child was safe with the police and would be taken to the Youth Crisis Center." Our standard of review does not allow us to review the evidence to determine whether there is anything to support Mother's point of view. *In re "H" Children*, 2003 WY 155, ¶ 58, 79 P.3d at 1013. Instead, we disregard evidence in favor of the appellant and assume that the appellee's evidence is true. *Id.* "The question is whether the evidence, examined in the light most favorable to the State, and with conflicts therein resolved in favor of the State, leads to the conclusion that, more likely than not, the [child was] neglected." *Id.*

[¶23] When we apply this standard, we find sufficient evidence of neglect. We recognize, as did the juvenile court, that the facts in this case present a close call. Most parents have been in the situation where a difficult child pushes them to their limits. However, there is a distinction between what might be called a bad parenting moment and neglect. There is sufficient evidence to support a finding that Mother crossed the line.

[¶24] The evidence, when viewed in the light most favorable to the State, established that Mother failed to provide adequate care and supervision necessary for NP's well being. *See* Wyo. Stat. Ann. § 14-3-202(a)(vii). Mother left NP at school, without adequate clothing, during a blizzard. Mother then refused to allow NP to enter her home when Officer Bullard brought him home and requested permission to come inside. She failed to arrange alternative care for NP. She failed to discuss options with Officer Bullard. In fact, Officer Bullard testified that she never indicated what she would like done with NP or where she would like him to take NP:

> Q. In the course of [the exchange at the home], were you ever able to ask [Mother] what she wanted done with NP?
>
> A. No. No.
>
> Q. Did she ever volunteer to you, "I need help?"
>
> A. No.
>
> Q. "Please take him to YCC?"
>
> A. No.

Q.   "I'm afraid that he might hurt me?"

A.   No.

Q.   "I'm afraid that he might hurt my family?"

A.   No.

Instead, Mother told Officer Bullard and NP to "get the f*** off" of her property.  This evidence was sufficient to establish that Mother neglected NP on the evening of December 14, 2015.

[¶25]  Mother also argues that the juvenile court "did not articulate how [refusing to communicate with law enforcement] violated a duty of care . . . ."  In response, the State points out that the court was not required to find that Mother violated a duty of care.  We agree.  The definition of neglect does not contain such a duty and, as we state above, there was sufficient evidence for the court's finding that she neglected NP.

## CONCLUSION

[¶26]  Mother waived her right to a jury trial when she failed to file a jury demand within ten days of her initial hearing.  The juvenile court's finding that Mother neglected NP was supported by sufficient evidence.  We affirm.